## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRIAN K. FERRY, SR.,

       Petitioner,

v.                                Case No. 8:16-cv-2692-T-33JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

### ORDER

      Brian K. Ferry, Sr., a Florida inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1.)  He challenges his convictions entered by the Circuit Court for the Sixth Judicial Circuit, in and for Pinellas County.  The Court previously determined that Ferry's petition is not time-barred.  (Doc. 19, p. 2.)  Respondent filed a response.  (Doc. 22.)  Ferry filed a reply.  (Doc. 24.)  Upon consideration, the petition is denied.

### PROCEDURAL HISTORY

      Ferry was convicted after a jury trial of DUI manslaughter (count one), fleeing to elude a law enforcement officer with agency insignia and lights and sirens (count two), and driving while license permanently revoked (count three).  (Doc. 11, Ex. 2.)  He was sentenced to consecutive prison terms of fifteen years on count one and five years on counts two and three.  (Doc. 11, Ex. 3.)  Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).  (Doc. 11, Ex. 5.)  Given the opportunity to file a *pro se*

brief, Ferry voluntarily withdrew his appeal.  (Doc. 11, Exs. 6, 8, 9.)  Ferry filed a petition

for writ of habeas corpus under Florida Rule of Appellate Procedure 9.141.  (Doc. 11, Ex.

10.)  The state appellate court denied his petition.  (Doc. 11, Ex. 11.)

Ferry next filed a motion for postconviction relief under Florida Rule of Criminal

Procedure 3.850.  (Doc. 11, Ex. 14, pp. 1-13.)  The state court struck his motion with leave

to amend.  (*Id.*, pp. 16-26.)  Ferry filed an amended postconviction motion and a motion to

supplement.  (*Id.*, pp. 33-63, 123-30.)  The state court struck several claims in the amended

motion, giving Ferry leave to amend, and reserved ruling on the remainder of his claims.

(*Id.*, pp. 140-45.)  Ferry accordingly filed a second amended postconviction motion.  (Doc.

11, Ex. 15, pp. 146-85.)  The state court summarily denied all postconviction claims.  (Doc.

11, Ex. 15, pp. 186-324; Ex. 17, pp. 472-640.)  The state appellate court *per curiam*

affirmed the denial of postconviction relief.  (Doc. 11, Ex. 19.)

## FACTS[1]

In the early morning hours of April 12, 2010, Clearwater Police Officer Kyle Resler

received information that Ferry, who had an outstanding misdemeanor warrant for his

arrest, was located inside a bar.  Officer Resler watched the bar's parking lot from a

position across the street.  When he saw Ferry's truck leave, he attempted to conduct a

traffic stop.  The truck pulled over and stopped.  As Officer Fontayne Egger also arrived on

the scene and Officer Resler was preparing to exit his vehicle, the truck sped away.  The

officers followed.  Officer Resler again attempted to pull the truck over.  When the truck

failed to pull over and accelerated instead, Officer Resler did not pursue it because doing

---

[1] This summary of the facts is derived from the trial transcript.

so based on a misdemeanor warrant was against Police Department policy.  However, Officer Egger maintained sight of the truck as it traveled north on Belcher Road.

Traffic on Belcher Road had a red light at the intersection with Drew Street, but the truck went through the red light into the intersection.  At that moment, a taxi cab driven by Joshua Donahue entered the intersection headed eastbound on Drew Street.  The vehicles collided and came to rest at the northeast corner of the intersection.  The officers arrived at the intersection very shortly after the crash.  Officer Resler pulled a man who he identified as Ferry from the driver's seat of the truck and had Ferry lie on the ground. Officer Resler observed signs that Ferry was impaired.

Two eyewitnesses at a nearby gas station testified about the crash and the events immediately following it.  Charles Hopkins testified that he saw a person get out of the driver's side of the truck and lie down on the ground.  John Hopkins testified that he saw a police officer pull a man out of the truck.  Neither Charles Hopkins, John Hopkins, Officer Resler, or Officer Egger testified to seeing another individual in or around the truck or fleeing from the crash site.

Ferry was transported to a hospital, where his blood was drawn.  Testing on the first blood sample showed that his blood alcohol content was between .171 and .174 grams per deciliter.  Testing on a second sample collected later showed that his blood alcohol content was between .147 and .152 grams per deciliter.   Dr. Michael Lawless, an emergency physician who treated Ferry, testified that Ferry's blood results indicated alcohol impairment.  Officer Stephan Hole observed Ferry in the hospital and believed that Ferry appeared intoxicated.  Donahue died as a result of injuries sustained in the crash.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. . . . Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). Ferry bears the burden of overcoming by clear and convincing evidence a state court factual determination. 28 U.S.C. § 2254(e)(1).

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. The state appellate court rejected Ferry's habeas petition and affirmed the denial of postconviction relief without discussion. The court's decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient

performance by counsel and resulting prejudice.   *Id.* at 687.   To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness."   *Id.* at 687-88.   A court must consider whether, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."   *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."   *Id.*   Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id.*

Ferry must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."   *Id.* at 691-92.   To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."   *Richter*, 562 U.S. at 105 (citations omitted).   *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA."). If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland*

test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.")

## DISCUSSION

### Ground Three

Ferry contends that during a break from jury selection, prospective jurors had improper discussions with the victim's family members and a representative from Mothers Against Drunk Driving (MADD).  By stating that the jury was informed of his "priors" before the start of trial, Ferry appears to allege that the victim's family discussed his prior convictions with the prospective jurors.  (Doc. 1, p. 7.)  Ferry asserts that his trial counsel and the trial court "fail[ed] to investigate" the alleged jury misconduct "in violation of the Sixth and Fourteenth Amendments."  (*Id.*)

The state court rejected Ferry's claim:

[Ferry] allege[s] that the Court and defense counsel erred by failing to adequately investigate juror misconduct.  According to the Defendant, activists affiliated with Mothers Against Drunk Driving (MADD) were "in close proximity and could have engaged in extremely damaging conversations with jury members."  In his amended motion, the Defendant argues that the outcome of his trial would have been different if counsel had asked for a mistrial or urged the Court to inquire further about possible juror misconduct.

To the extent that the Defendant is arguing that the trial court erred in failing to investigate this alleged juror misconduct, such a claim is not cognizable in a motion for postconviction relief.  See Sampson v. State, 845 So. 2d 271 (Fla. 2d DCA 2003) (holding that a claim of trial court error should have been brought on direct appeal and is not cognizable in a postconviction motion).

As a basis for his ineffectiveness claim, the Defendant describes an incident during jury selection in which a bailiff witnessed the victim's family and the MADD representative speaking with potential jurors.  Upon bringing this to the Court's attention, defense counsel told the Court that the issue did not need to be addressed; the Defendant asserts that counsel should have at

that point moved for a mistrial or at least asked the Court to conduct an inquiry regarding the issue.  The complete transcript of this exchange is as follows:

| THE COURT: | The Deputy just informed me that when the jurors were out in the hall, the victim's family was there, the Defendant's family was there, and the MADD representative was with the victim's family.  He did not hear any conversation, but I just want that to be on the record.  And if anybody wants me to do anything or ask anything, I will. |
|---|---|
| [DEFENSE COUNSEL]: | No. |
| [STATE]: | No. |
| THE COURT: | Thank you. |

Based on this exchange, specifically the fact that the deputy reported hearing no conversation between the prospective jurors and the other parties, counsel would have had no reason to move for a mistrial or request that the Court take any further action.  As such, the Defendant has not demonstrated that counsel was deficient in this regard.  See Downs, 453 So. 2d at 1106-07 (citing Strickland 466 U.S. 668) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct *from counsel's perspective at the time*.") (emphasis added).  Because the Court finds that the Defendant has not met the deficiency prong of Strickland, this Court need not consider the prejudice prong.  Maxwell v. Wainwright, 490 So. 2d 927 [(Fla. 1986)].

The Defendant further argues that there were two hearings held after trial specifically addressing this misconduct, on July 12 and July 19, 2011, and appears to argue that counsel was ineffective for failing to secure the Defendant's presence at these hearings.   Contrary to the Defendant's assertions, the record reflects that this issue was not the subject of these hearings.   Rather, the subject of these hearings was a separate matter concerning an alternative juror failing to appear for trial on time.  As such, the Defendant has also failed to demonstrate that counsel was deficient in this regard.  For the foregoing reasons, this claim is denied.

(Doc. 11, Ex. 15, pp. 188-89) (court's record citations and footnote omitted).

Ferry's claim that the trial court erred in failing to investigate alleged jury misconduct is barred. Ferry presented a federal claim to the state court in alleging trial court error (*see* Doc. 11, Ex. 15, pp. 160-61) but the state court found that he did not properly present the claim. When the state court's rejection of a federal constitutional claim on procedural grounds is based on an "independent and adequate" state ground, federal review of the claim is foreclosed. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). *See also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).

Here, the state court found that Ferry's trial court error claim should have been raised on direct appeal, not in postconviction proceedings, and the state appellate court approved of the application of this bar through its *per curiam* affirmance. *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion."). The state court's rejection of Ferry's claim thus rested upon an independent and adequate state procedural bar. As a result, Ferry's claim is procedurally defaulted and can only be considered if he establishes either cause and prejudice or a fundamental miscarriage of justice. *See Harris v. Reed*, 489 U.S. 255,

262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" one of these circumstances). Ferry does not argue or establish cause and prejudice or a fundamental miscarriage of justice to overcome the default. His claim of trial court error is therefore barred from federal habeas review.

Furthermore, Ferry has not shown that the state court's rejection of his ineffective assistance of trial counsel claim was unreasonable. The state court correctly found that counsel's performance must be evaluated at the time of the alleged error or omission. *Strickland*, 466 U.S. at 689. As the state court noted, counsel was informed that the deputy did not hear any conversation between the jurors and anyone else.[2] Ferry fails to show that, in light of the information before counsel at the time, counsel had reason to seek further inquiry into the jurors' presence near the victim's family members and the MADD representative. Thus, the record supports the state court's conclusion that counsel did not perform deficiently.

Accordingly, Ferry does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim. He is not entitled to relief on Ground Three.

**Ground Eight**

Ferry argues that counsel was ineffective "for failure to allow [him] to attend post trial hearings dated July 12th and 19th, 2011." (Doc. 1, p. 15.) Ferry asserts that he had the

---

[2] This court notes that Ferry attached to his first amended postconviction motion an undated affidavit of Julia K. Zumpf that states, "during the jury selection on the day of trial, many people were in the hall of the courtroom. The victim's families were talking about the newscasts as well as other things directly with the potential jurors." (Doc. 11, Ex. 14, p. 79.) However, this affidavit does not state that counsel was informed of or was present for any such conversations.

right to be present at all critical proceedings.[3]  He claims that if he was present, he would have "presented evidence proving the jury was in the hall of the courthouse talking directly with the victim's family.  The MADD representative, the news reporter, and the Defendant's family about the Defendant's prior record and a misdemeanor warrant."  (*Id.*)

The state court found that counsel did not perform deficiently in failing to assure Ferry's presence at these hearings within its discussion of the claim addressed in Ground Three, *supra*.  The state court further discussed Ferry's claim:

> The Defendant alleges his trial counsel was ineffective for excluding the Defendant from critical post-trial proceedings. Specifically, he claims he was not permitted to attend hearings held on July 6, 2011, July 12, 2011, and July 19, 2011.  According to the Defendant these hearings were held to address the "prejudicial effect of actions taking place during the trial concerning the defendant's jury," for which he was entitled to be present.  The Defendant also complains that trial counsel should have requested that the transcripts of those proceedings be prepared as part of the record on appeal.  However, in his initial claim, the Defendant failed to explain how he was prejudiced by not being present at these post-trial proceeding[s].  The Defendant seems to contend that he was necessarily prejudiced because he was absent.  In the Court's October 8, 2013 order, this claim was stricken as facially insufficient because conclusory allegations of prejudice are insufficient in a motion for postconviction relief.  See Griffin, 866 So. 2d 1.
>
> In his second amended motion, the Defendant claims that the outcome of the proceedings would have been different had he been present at these hearings because he would have been able to confront the court and the jurors regarding what was said in the courthouse hallway between the victim's family, the MADD representative, and the jurors during the trial.  However, as discussed . . . *supra*, this issue was not the subject matter of these hearings.  The Defendant further contends that his exclusion was "per se reversible error," as the issues presented by counsel dealt with the prejudicial effect of actions taking place during the trial concerning the Defendant's jury.  This allegation remains to[o] conclusory to warrant relief.

---

[3] "[D]ue process clearly requires that a defendant be allowed to be present to the extent that a fair and just hearing would be thwarted by his absence . . . Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  *United States v. Novaton*, 271 F.3d 968, 998 (11th Cir. 2001) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (internal quotation marks omitted).

>See Griffin, 866 So. 2d 1; Philip v. State, 14 So. 3d 1243, 1244 (Fla. 2d DCA
>2009) (holding that upon the filing of an amended motion for postconviction
>relief, the postconviction court may summarily deny the claim if it is once
>again facially insufficient).

(Doc. 11, Ex. 15, pp. 197-98) (court's record citations omitted).

The state court did not unreasonably determine that Ferry failed to provide a sufficient basis to establish ineffective assistance of counsel. As the state court noted in discussing the claim presented in Ground Three, *supra*, the hearings concerned an alternate juror who did not appear on time for trial. Ferry only speculates that he would have been permitted to present evidence about a different issue. Furthermore, Ferry has not clearly identified evidence about the alleged misconduct known to him at the time that would have demonstrated reversible error. His speculative and conclusory allegations are insufficient to demonstrate that his counsel was ineffective for not ensuring that he was present at the post-trial status hearings.[4] *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Ferry does not show that the state court's decision resulted in an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Eight.

**Ground One**

The transcripts of the July 2011 hearings were not included in the record on appeal. Ferry asserts that appellate counsel was ineffective for failing to supplement the record on

---

[4] Ferry does not assert that he was personally aware of any alleged misconduct or was aware of Julia K. Zumpf's observations at the time of the July 2011 status hearings. As her affidavit is undated, it is not clear when Ferry first could have become aware of her statements.

appeal with these transcripts because they addressed the alleged jury misconduct. Although it is now apparent that the hearings involved a different matter, at the time Ferry raised this claim, the transcripts had not yet been prepared.[5]  Counsel's performance must be evaluated under the circumstances at the time of his work on the appeal.  *See Strickland*, 466 U.S. at 689.  Additionally, the state appellate court's decision must be analyzed based on the record before it.  *See Pinholster*, 563 U.S. at 181-82.

The *Strickland* test applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To demonstrate prejudice, Ferry must show a reasonable probability that he would have prevailed on appeal but for counsel's deficient performance.  *Robbins*, 528 U.S. at 285-86.   Ferry has not established either prong of *Strickland*.

In support of his ineffective assistance of appellate counsel claim, Ferry alleged in his state habeas petition:

> On June 22, 2011, during a recess a Pinellas County Deputy Sheriff informed the Court "when the jurors were out in the hall the victim's family was there, the Defendant's family was there, and the MADD representative was with the family." Trial counsel should [have] moved the court for a mistrial at that time but declined to even question the events that took place.
> . . .
>
> After reviewing the record and realizing parts of the record regarding hearings being held on July 12, 2011, and again on July 19, 2011, were missing from the record Petitioner wrote a letter to [appellate counsel] requesting copies of the transcripts of the missing portion of the record. Petitioner, as of this date, has not received the missing records, or a response from [appellate counsel] with an explanation as the[ir] whereabouts.
> . . .

---

[5] The court reporter's certificates show that the transcripts were prepared on October 31, 2013, during the postconviction proceedings.  (Doc. 11, Ex. 15, pp. 303, 307.)

It is quite obvious from the exhibits annexed hereto that trial counsel knew the discussion between the MADD representative, the jury members, and the victim's family was going to be an issue.  Therefore, the very day a hearing was held to address the issue of jury tampering issue, July 19, 2011, trial counsel filed a motion of "designation to the trial court reporter."  The hearing of July 19, 2011, was not ordered by trial counsel.  Therefore, the record was incomplete for the appellate counsel's review as well as the review by this Court.

. . .

In the instant case - prior to appellate counsel filing his Anders brief before this court January 12, 2012, Petitioner address[ed] a letter of concern to appellate counsel regarding the jury tampering issue.  Along with various other concerns.  Nevertheless, appellate counsel failed to obtain the records of the July 19, 2011 hearing.

(Doc. 11, Ex. 10, pp. 3, 4-5, 9-10.)

Ferry also attached a letter he wrote to appellate counsel outlining issues he believed should be raised on appeal. The letter states in part:

[During jury selection], the court took a break.  During this time, some of the panel was seen by the bailiff talking to the victim's family in the hall.  The bailiff told the judge that this had happen[ed] and counsel still did not move for a mistrial.

(Doc. 11, Ex. 10, Attachment L, p. 2.)

Ferry has not shown that appellate counsel performed deficiently. His letter to appellate counsel involved only a speculative and unsupported allegation of juror misconduct.  He offered no supporting evidence that any wrongdoing occurred, or that the July 2011 hearings involved any such wrongdoing.

Moreover, appellate counsel would have had access to the trial transcript, which shows that contrary to Ferry's assertion, the deputy did not tell the court he heard conversation between the prospective jurors and the victim's family.  As addressed in the postconviction court's order, the deputy told the court that he observed the prospective

jurors, the MADD representative, and the victim's family members in the same hallway but also told the court that he did not hear any conversation.  (Doc. 16, Ex. 23, p. 242.)

Additionally, the trial transcript shows that prior to learning of the deputy's observations, the trial judge stated that because she "had an issue a couple of months ago," she believed it "prudent just to tell [family members] that the jury will be around, the prospective members, and all it takes is a telephone call in their presence and we have to start all over again."  (Doc. 16, Ex. 22, p. 19.)  The trial judge subsequently advised family members of Ferry and of the victim not to have any conversations that the prospective jurors might hear.  (*Id.*, pp. 131-32; Doc. 16, Ex. 23, pp. 142-43.)  In sum, as there was no evidence before counsel indicating that the impropriety alleged by Ferry had occurred, appellate counsel did not perform deficiently in failing to obtain the transcripts for inclusion in the appellate record.

Furthermore, Ferry has not shown prejudice.  Without producing the transcripts when he made his ineffective assistance claim, he could not establish a reasonable probability that the outcome on appeal would have been different had those transcripts been made part of the record on appeal.  Accordingly, the state court could have reasonably concluded that Ferry failed to demonstrate a meritorious appellate issue.  Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvora v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).  The state court's rejection of Ferry's claim of ineffective assistance of appellate counsel was not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts.  Consequently, Ferry is not entitled

to relief on Ground One.

**Ground Two**

Ferry argues that trial counsel was ineffective in failing to sever the charge of driving while license permanently revoked from the charges of DUI manslaughter and fleeing to elude.   He claims that he was prejudiced because evidence that his license was permanently revoked alerted the jury that he "must have had a prior felony."  (Doc. 1, p. 6.) The state court denied his claim:

> Grounds One (A) and One (B) collectively allege that counsel was ineffective for failing to sever count three of driving while license suspended or revoked (DWLSR) from the DUI manslaughter and fleeing or eluding charges.  The Defendant claims he was prejudiced because the jury learned of his driving history and prior felonies during the course of the trial as part of the State's case for DWLSR.  The Defendant maintains the trial should have been severed or bifurcated so the jury did not hear this prejudicial information when considering the evidence for DUI manslaughter.  In his amended petition, the Defendant alleges the outcome of the trial would have been different, but for counsel's failure to request a severance.  The State was directed to respond to this claim.

> In response, the State argues that counsel was not deficient for failing to file a motion to sever and the Defendant fails to show that there is a reasonable probability the outcome of the trial would have been different.  This Court agrees.  When a defendant claims that counsel was ineffective for failing to file a motion, he must show that counsel knew that a valid basis existed to file the motion, yet failed to do so.  Harrison v. State, 562 So. 2d 827, 827-828 (Fla. 2d DCA 1990).  Florida Rule of Criminal Procedure 3.150(a) provides that two or more offenses may be charged together "when the offenses . . . are based on the same act or transaction or on two or more connected acts or transactions."  However, Rule 3.152(a)(2)(A) requires the severance of charges when needed to "promote a fair determination of the defendant's guilt or innocence of each offense."  Therefore, in order for counsel to be deficient, the Defendant must either show that the offenses were improperly joined, or that he suffered unfair prejudice from the failure to sever.  The Defendant fails to meet this burden.

> As stated above, Florida Rule of Criminal Procedure 3.150(a) provides that two or more offenses may be charged together "when the offenses . . . are based on the same act or transaction or on two or more connected acts or

transactions."  Two or more offenses are properly joined when there is a "meaningful relationship" between the charges.  Crossley v. State, 596 So. 2d 447, 450 (Fla. 1992).  The Florida Supreme Court has found that such a "meaningful relationship" exists when the crimes occurred during a "spree," meaning that they were "interrupted by no significant period of respite" or when the crimes are "causally related to each other" in an episodic sense. Smithers v. State, 826 So. 2d 916, 923 (Fla. 2002); Ellis v. State, 622 So. 2d 991, 1000 (Fla. 1993); see also Fotopoulos v. State, 608 So. 2d 784, 790 (Fla. 1992).  Here, the Defendant's offenses of DWLSR, DUI manslaughter, and fleeing or eluding arose out of the same transaction and therefore have a meaningful relationship between them.  Because the offenses arose out of the same transaction, joinder was proper and counsel not deficient for failing to file a motion to sever pursuant to rule 3.150(a).  Fla. R. Crim. P. 3.150(a).

Moreover, counsel did not need to file a motion to sever under rule 3.152 in order for the Defendant to receive "a fair determination of the defendant's guilt or innocence of each offense" or protect against "unfair prejudice."  Fl. R. Crim. P. 3.152.  Unfair prejudice results when the "evidence relating to each of the crimes may have the effect of bolstering the proof of the other." See Dupree v. State, 705 So. 2d 90, 95 (Fla. 4th DCA 1998) (quoting Crossley, 596 So. 2d at 450).  Joinder is only improper where the testimony in one case standing alone is insufficient, and the evidence that the defendant may have also committed another crime has the effect of tipping the scales towards the defendant's guilt.  Estrich v. State, 995 So. 2d 613, 618 (Fla. 4th DCA 2008) (quoting Crossley, 596 So. 2d at 450).  In this case, there was no danger of unfair prejudice because counsel strategically filed pretrial motions in limine to exclude all references to the Defendant's prior driving history and prior felonies besides the limited fact that his license had been revoked.  Cf. Johnson v. State, 14 So. 3d 1282, 1283 (Fla. 2d DCA 2009) (finding that counsel could have filed a motion to sever DUI manslaughter and DWLSR where jury was confronted with defendant's prior driving history which was admitted to prove the DWLSR).  The record reflects that prior to trial counsel filed a successful motion in limine to exclude any mention of the Defendant's prior DUI or DWLSR charges.  Counsel argued that the Amended Felony Information listed priors for both the DUI manslaughter charge and the DWLSR and requested that the Court not give the information to the jury.  Counsel further argued that the Defendant's driving history needed to be redacted in order to show only the date of the revocation and none of the prior DWLSR or DUI charges.  Accordingly, the record reflects that the jury was not informed of the Defendant's prior offenses or given a complete driving history in order to prove the driving while license revoked charge.  Instead, the jury was given a severely redacted version that only indicated that the Defendant's license was revoked and the date it was revoked in support of the DWLSR charge.  The very limited evidence in support of the DWLSR charge did not have the effect of unfair

prejudice, or in other words, "bolstering the proof" of the DUI manslaughter charge or the fleeing or eluding charge.  Dupree, 705 So. 2d at 95. Therefore, since the offenses were properly joined, and the State did not use the evidence presented for one offense to bolster the other, the Defendant received a fair determination of guilt on each offense.  The Defendant fails to satisfy the first prong of Strickland.

Even assuming that counsel should have filed a motion to sever pursuant to Florida Rule of Criminal Procedure 3.152(a)(2)(A), the Defendant fails to show that there is a reasonable probability that the outcome of the trial would have been different.  Rutherford v. State, 727 So. 2d 216 (Fla. 1998). Contrary to the Defendant's sworn assertions that he was prejudiced by counsel's failure to sever because the jury learned of his prior felonies and complete driving history in support of the DWLSR charge, as noted above, the record refutes this claim.  Furthermore, the evidence against the Defendant was overwhelming.  The record reflects that Officer Kyle Resler testified that he identified a vehicle belonging to the Defendant as having an expired tag outside of a bar.  Officer Resler testified that after he observed the Defendant's vehicle drive away from the bar he pursued with the intent to conduct a traffic stop.  Officer Resler testified that he pulled the vehicle over and just as he was getting out of his vehicle, the Defendant's vehicle fled.  Officer Resler testified that after the Defendant's vehicle fled, it crashed into another vehicle.  Officer Resler testified that he went up to the driver's side door of the Defendant's vehicle while the engine was revving and told the driver of the vehicle, who was later identified as the Defendant, to turn the car off.  Officer Resler testified that the Defendant was unresponsive to his commands so he reached into the vehicle, turned the car off, and pulled the Defendant out of the driver's seat of the vehicle.  Additionally, several witnesses testified that the Defendant was the only one observed at the accident scene near his vehicle and they did not witness anyone fleeing the Defendant's vehicle.  Specifically, Officer Fontayne Egger testified that she responded to the accident only moments after it happened and did not witness anyone exit the vehicle.  Similarly, John Hopkins and Charles Hopkins testified that they witnessed the accident and did not witness anyone walking or running away from the vehicle.  Based upon the foregoing testimony against the Defendant indicating that he was the driver of the vehicle, there is not a reasonable probability that had counsel severed the DWLSR charge from the remaining charges that the outcome of the trial would have been different.  This claim is therefore denied.

(Doc. 11, Ex. 17, pp. 474-77) (court's record citations omitted).

Deference must be afforded to the state court's conclusion that the counts were

properly charged together under Florida law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). This Court also defers to the state court's finding that counsel was not required to move to sever the charges under Florida law. Although Ferry's ineffective assistance of counsel claim is a federal constitutional claim, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) (quoting *Alvord*, 725 F.2d at 1291). *See also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Furthermore, even assuming that counsel did perform deficiently, Ferry has not shown resulting prejudice. Ferry asserted at trial that another, unidentified person was driving his truck. But a review of the trial transcript shows, as the postconviction court thoroughly detailed in its order, that the State presented substantial evidence that Ferry was driving. (*See* Doc. 16, Ex. 24, pp. 272, 274, 278, 286, 334-35, 346-47, 369, 371.) Thus, the record supports the state court's finding that Ferry failed to establish a reasonable probability of a different outcome at trial on the charges of DUI manslaughter and fleeing to elude even if the charge of driving while license permanently revoked had been severed.

Ferry has not shown that the state court unreasonably applied *Strickland* or

unreasonably determined the facts in rejecting his claim.  Consequently, he is not entitled to relief on Ground Two.

**Ground Four**

Ferry argues that trial counsel was ineffective for failing to move for a *Richardson*[6] hearing when the State committed a discovery violation in failing to call Lawrence McFee, who was on the State's witness list, to testify at trial.

The state court denied Ferry's claim:

The Defendant alleges counsel was ineffective for failing to request a Richardson hearing because the State committed a discovery violation by failing to call eye-witness Lawrence McFee.  The Court struck the Defendant's claim in its June 20, 2013 order for failure to assert that the outcome of his trial would have been different, but for counsel's failure to address this alleged discovery violation.  The Defendant's first amended motion failed to cure this deficiency, thus the Court again struck this claim in its October 8, 2013 order and permitted the Defendant another opportunity to amend this claim.

In his second amended motion, the Defendant asserts that the State committed a Richardson violation by failing to call Mr. McFee at trial despite having provided his name as a potential witness in discovery.  The Defendant claims that the testimony of Mr. McFee would have corroborated that of eye-witness Charles Hopkins, who testified that he witnesse[d] the driver exit the vehicle prior to the police arriving, and would have contradicted the testimony of eye-witness John Hopkins, who testified contrarily.  The Defendant asserts that but for counsel's failure to address this alleged discovery violation, the outcome of the trial would have been different because Mr. McFee's testimony would have refuted the State's position, and would have supported the defense's position that the Defendant was not the driver.

When the defense alleges that the State violated a discovery rule, the Court must first determine whether a violation occurred.  "If a violation is found, the court must assess whether the State's discovery violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what [e]ffect it had on the defendant's ability to prepare for trial."  Sinclair v.

---

[6] *See Richardson v. State*, 246 So.2d 771 (Fla. 1971) (a trial court must inquire into the circumstances if the State is alleged to have violated discovery rules).

State, 657 So. 2d 1138, 1140 (Fla. 1995); Taylor v. State, 62 So. 3d 1101, 1112 (Fla. 2011); see also State v. Hall, 509 So. 2d 1093 (Fla. 1987). This claim is without merit, as the State's decision not to call Mr. McFee at trial does not constitute a Richardson violation. The State is not obligated to call any particular witnesses at trial. Rather, the discovery rules merely require that the State, upon written request by the defense, furnish a list of all witnesses whom the prosecuting attorney knows to have relevant information concerning the charged offense or any defense thereto. Fla. R. Crim. P. 3.220(b)(1)(A) (2010). According to the Defendant's own motion, the State complied with the rules of discovery by providing the name of Mr. McFee through discovery. Counsel was therefore not ineffective for failing to request a Richardson hearing to address a discovery violation, as counsel cannot be ineffective for failing to file a meritless motion. See Teffeteller v. Dugger, 734 So. 2d at 1020; Williams v. State, 987 So. 2d 1, 10 (Fla. 2008). Accordingly, this claim is denied.

(Doc. 11, Ex. 15, pp. 189-90 ) (court's record citations and footnote omitted).

This Court must defer to the state court's conclusion that the prosecution's decision to forgo calling a witness whom it listed is not a violation of Florida's discovery rules. *Richey*, 546 U.S. at 76. Furthermore, as the motion would have been meritless under Florida law, Ferry has not shown that counsel performed deficiently in failing to make the motion. *See Will*, 278 Fed. App'x at 908*; Herring*, 397 F.3d at 1354-55. *See also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (an attorney is not ineffective for failing to raise issues that "clearly lack merit."). Ferry has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Consequently, he is not entitled to relief on Ground Four.

**Ground Five**

Ferry alleges that trial counsel was ineffective for failing to secure and call exculpatory witnesses. First, to the extent that Ferry alleges that his counsel was ineffective for failing to depose John Hopkins, Officer Lazzaro, or Officer Bodle, his claim is barred because he did not present these allegations of ineffective assistance in his first

or second amended postconviction motions.  (Doc. 11, Ex. 14, pp. 48-52; Ex. 15, pp. 163-66.)

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition.    28 U.S.C. § 2254(b)(1)(A);  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

Ferry's failure to raise these claims in his postconviction motions leaves the exhaustion requirement unsatisfied.   He cannot return to state court to present these claims in an untimely, successive postconviction motion.  *See* Fla. R. Crim. P. 3.850(b), (h). Accordingly, the claims are procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) (the doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").  Ferry has not argued or demonstrated cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default of these claims.  Consequently, they are barred from federal habeas review.

Ferry also claims that counsel was ineffective for failing to call Lawrence McFee and George Leap to testify at trial, and for failing to make contact with George Leap until trial

had started.  These claims are exhausted.  With respect to McFee, Ferry contends that he

would have testified to seeing a man exit the driver's side of the truck after the crash but

before police arrived.  In making this claim, Ferry appears to suggest that, because he was

pulled from the truck by Officer Resler, a person who was seen exiting the vehicle prior to

the officers' arrival was the actual driver.  In support, he provided the postconviction court

with Officer Downes's report, which states in part:

> He said the front of the truck hit the passenger side of the cab.  The vehicles
> came to a stop on the northeast corner of the intersection.  A male got out of
> the truck and went down on the ground.  Mc[F]ee stayed in the turn lane and
> started to call 911 from his cell phone.  He said a Police cruiser arrived on
> scene before he could make the call.  He was not sure how long it was after
> the crash that the cruiser arrived.  I asked him to estimate, and he said
> between 10-15 seconds.

(Doc. 11, Ex. 14, p. 86.)

The state court rejected Ferry's claim that counsel was ineffective for failing to call

McFee:

> In his amended motion, the Defendant asserts that he informed counsel of
> these witnesses, and alleges that Mr. McFee would have testified that he
> observed "the driver exit the vehicle prior to police arriving," which would
> have contradicted John Hopkins' testimony. . . . The Defendant states there
> is a reasonable probability that the outcome of the proceedings would have
> been different if counsel had called Mr. McFee.
>
> (A) Failure to Call Lawrence McFee
>
> The Defendant asserts that had counsel called Mr. McFee at trial, Mr. McFee
> would have testified that he witnessed the accident occur, and that the driver
> exited the vehicle prior to the police arriving, which would have corroborated
> Charles Hopkins' eye-witness testimony that the driver exited the vehicle
> prior to police arriving on the scene.  The Defendant claims that Mr. McFee's
> testimony would have contradicted eye-witness John Hopkins' testimony that
> the police pulled a person out of the vehicle.
>
> The Court finds that the Defendant is not entitled to relief on this claim, as he
> has failed to demonstrate that a reasonable probability actually exists that the

outcome of the trial would have been different had Mr. McFee testified that he witnessed the driver exit the vehicle and lay on the ground prior to the police arriving at the scene. Officer Resler, the officer who had initially been pursuing the Defendant on the night of the collision, testified that he arrived at the scene of the crash very shortly after it happened. Upon arriving at the scene, Officer Resler testified that he approached the truck, and at that time none of the doors were open and the engine was revving. Officer Resler testified that the Defendant was still seated in the driver's seat, and did not respond to the officer's request to exit the vehicle. Officer Resler testified that he then reached into the truck, turned off the ignition, and pulled the Defendant out of the truck. This testimony stands in contrast to the Defendant's assertion that none of the witnesses implied that an officer pulled a person out of the vehicle. Officer Resler further testified that there was no indication that there was any other person in the truck or in the vicinity of the crash.

Charles Hopkins then testified that he witnessed the collision occur, and that the police arrived shortly after the crash. Charles Hopkins testified that he saw a person on the ground next to the pickup truck, and that during his initial interview with the police he stated that he saw an older man get out of the driver's side of the truck and lie down on the ground next to the truck. Charles Hopkins further testified that he did not see anyone else in or around the truck, and did not see anyone else walking or running away from the crash. John Hopkins also testified that he witnessed the collision occur, and that the police arrived less than one minute after the crash. On direct examination, John Hopkins testified that he witnesse[d] a police officer pulling a man out of the vehicle, and that he did not see anyone else in or around the truck or taxi cab. On cross examination, defense counsel attempted to impeach John Hopkins with a prior statement to the police, in which he indicated that the saw a man get out of the truck and lie down on the ground. However, John Hopkins further testified that he did not recall telling police that he saw a man climb out of the truck and get on the ground. On redirect examination, John Hopkins testified that he had a clear recollection of seeing the officer pull a man out of the truck. On cross examination of Officer Hole, the officer who initially interviewed John Hopkins, Officer Hole testified that John Hopkins did make the statement that he observed a man get out of the driver's side of the truck and lie down on the ground. Officer Hole testified on redirect examination that John Hopkins never gave any indication that the man he saw was anyone other than the Defendant, and that throughout his entire investigation there was never any indication that there was more than one person in that pickup truck.

Officer Egger, the second officer on the scene of the crash, testified that she did not see anyone exit the truck, and did not see anyone else at the scene besides the Defendant. She testified that she saw the Defendant lying on the

ground with Officer Resler, but did not see anyone else lying next to the truck.

During his motion for Judgment of Acquittal (JOA), defense counsel argued that the identity of the driver was not proven, pointing out that both Charles and John Hopkins said they saw a person get out of the truck but could not identify him.  The Court denied this motion.  Furthermore, defense counsel pointed out these inconsistencies to the jury in his closing argument. Counsel argued that John Hopkins' trial testimony was inconsistent with his statement to police that he saw an older man exit the vehicle, and argued that when both Charles and John Hopkins arrived at the scene, there were no police there and an older individual got out of the truck.  Nonetheless, the jury found sufficient evidence to find the Defendant guilty.

Given the above testimony and argument, it is unlikely that the outcome of the trial would have been different had Mr. McFee been called to testify to corroborate Charles Hopkins' statement that the driver exited the vehicle and laid on the ground prior to police arrival, especially in light of the fact that Charles Hopkins and every other witness testified that they did not see any other individual in or around the truck at the time of the collision and in light of Officer Resler's testimony that he personally pulled the Defendant out of the truck.  Because the Court finds that the Defendant has not met the prejudice prong of Strickland, this Court need not consider the deficiency prong.  Maxwell v. Wainwright, 490 So. 2d 927.  For the foregoing reasons, this claim is denied.

(Doc. 11, Ex. 15, pp. 191-93) (court's record citations omitted).

The record supports the state court's detailed summary of the evidence of Ferry's guilt, as well as its conclusion that, based on this evidence, there is no reasonable probability that McFee's testimony would have changed the outcome of trial.  (Doc. 15, Ex. 24, pp. 285-87, 295-96, 298, 334-35, 337-39, 344-47, 349-53, 356, 371-72; Ex. 25, pp. 483-87.)

Moreover, Ferry's claim cannot provide relief because it is speculative.  The only document that contains information about McFee's observations of the crash, and thus his potential trial testimony, is the police report.  But as the report merely provides Officer Downes's recounting of McFee's statement, Ferry has not presented sufficient evidence

of McFee's proposed testimony to establish his ineffective assistance claim.  *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).  *See also Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful.  This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).

Finally, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one [a reviewing court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995).  Under the circumstances, Ferry has not shown that counsel's decision not to call McFee was "patently unreasonable."  *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.") (quotations omitted).  *See also Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002) ("The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take.").  Thus, Ferry has not carried his burden of showing that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim that counsel was ineffective for not calling Lawrence McFee.

The state court also rejected Ferry's claim that counsel was ineffective for failing to

call George Leap and for not securing his presence until the second day of trial:

> The Defendant . . . alleges that Mr. Leap would have testified that "every time he talked to [Defendant], he was sober and appeared fine." The Defendant states there is a reasonable probability that the outcome of the proceedings would have been different if counsel had called . . . Mr. Leap.
>
> . . .

(B) Failure to Call George Leap

The Defendant asserts that counsel was deficient when he failed to secure witness George Leap until the second day of trial. The Defendant assets that on the morning of the second day of trial, Mr. Leap was deposed by the State, and cross-examined at the deposition by defense counsel's co-counsel . . . Subsequently, Mr. Leap was not called to testify at trial. The Defendant claims that had Mr. Leap been called to testify, he would have testified that he spoke with the Defendant several times during the night of the crime and that each time, the Defendant appeared "sober and fine." The Defendant asserts that Mr. Leap would have testified that the Defendant always had a driver with him, and that on the night in question the Defendant only drank two twelve-ounce beers in a two-and-a-half hour period.

The Court finds that the Defendant is not entitled to relief on this claim. The determination of whether counsel's decision not to call a witness was a strategic decision or the result of ineptitude generally requires an evidentiary hearing. Bulley v. State, 900 So. 2d 596 (Fla. 2d DCA 2007). However, an evidentiary hearing is not required when it is obvious from the record that counsel's decision was strategic. Jackson v. State, 975 So. 2d 485, 486 (Fla. 2d DCA 2007), citing State v. Williams, 797 So. 2d 1235, 1239 (Fla. 2001); see also McCoy v. State, 113 So. 3d 701 (Fla. 2013), citing Taylor v. State, 87 So. 3d 749, 763 (Fla. 2012) (holding that the strategic decision of trial counsel not to present a certain witness does not constitute ineffective assistance of trial counsel if that decision was the product of a reasonable trial strategy).

Here, it is evident from the record that counsel's decision not to call Mr. Leap was a reasonable strategic decision. On the morning of the first day of trial, the Defendant informed the Court that there was one witness (Mr. Leap) that his attorney had not been able to get a hold of. In response, counsel informed the Court that Mr. Leap was with the Defendant at the bar that night, and that according to the Defendant, Mr. Leap would have testified that the Defendant was in the bar with another person. Counsel indicated that Mr. Leap did not see the Defendant drive, and did not witness the accident – the extent of Mr. Leap's testimony would be that the Defendant was in the

bar for a period of time that night with one or more other people. Counsel indicated that the bartender would also testify to this information. Thus, despite the Defendant's preference that this witness be called to testify, counsel did not ask the Court to subpoena Mr. Leap because his testimony would have been cumulative, and because counsel had not yet been able to locate Mr. Leap. Shortly after this conversation, co-counsel was able to speak with Mr. Leap on the telephone, at which time Mr. Leap indicated his willingness to appear if subpoenaed. Mr. Leap indicated at that time that his testimony would be as previously indicated by counsel–simply that he was at the bar with the Defendant, did not leave the bar with the Defendant, did not drive with the Defendant, and did not witness the accident. At that time, the State requested to depose Mr. Leap.

During this deposition, Mr. Leap testified that he spoke with the Defendant a number of times that night, that he saw the Defendant at the bar sitting with two other people, and that he left the bar before the Defendant did. Mr. Leap testified that at the time he left the bar between 11:00 and 12:00, he could not ascertain how impaired the Defendant was, but that it seemed he probably had a few drinks. The Defendant argues that counsel should have been present at this deposition himself, instead of co-counsel, to ask the proper questions of Mr. Leap in order to elicit testimony that the Defendant was sober, and that the Defendant always had a driver with him. However, Mr. Leap's testimony regarding his assessment of the Defendant's sobriety was unlikely to have affected the outcome of the trial given that the bartender testified that the Defendant only had two beers while at the bar, and given that the results of his initial blood analysis reflected a blood alcohol level of between .171 and .174. Furthermore, any testimony by Mr. Leap regarding the Defendant's usual practice of having a driver accompany him was also unlikely to affect the outcome of the trial, given that every eye-witness testified that they did not see any other individual in or around the truck at the time of the collision. For the foregoing reasons, this claim is denied.

(Doc. 11, Ex. 15, pp. 191, 192-94) (court's record citations omitted).

Ferry fails to show that the state court unreasonably determined that counsel did not perform deficiently. Leap, who is Ferry's nephew, testified at deposition that he saw Ferry in the bar on the night of the offenses and that be believed Ferry had had a few drinks, but that it was hard to discern his level of intoxication.[7] Thus, there is no indication that Leap

---

[7] Leap testified:

Q      Could you tell me how much [Ferry] had had to drink before from the last time you

would have testified that Ferry was "fine and sober," as Ferry contends.  In addition, given the evidence of Ferry's identity as the driver, the evidence of his blood alcohol level, and the bartender's testimony that Ferry only had two beers while he was at the bar, Ferry has not shown a reasonable probability that Leap's testimony would have changed the outcome of the trial.  Furthermore, even assuming that counsel could have elicited testimony by Leap that Ferry typically had a driver with him, as the state court found, there is no reasonable probability that such testimony would have changed the outcome of trial in light of the prosecution's evidence that no witness saw a second person in or near the truck at the crash site.  (Doc. 16, Ex. 24, pp. 298, 334-35, 338-39, 371-72; Ex. 25, pp. 486-87.) Accordingly, Ferry has not demonstrated that counsel's decision not to call George Leap was patently unreasonable.

Because Ferry has not established that counsel was ineffective in failing to call Leap at trial or contact him earlier, he has failed to demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this claim. Consequently, Ferry is not entitled to relief on Ground Five.

---

saw him what his sobriety was?

A    Oh, God, it's hard to tell with him.  I mean, he's a professional drinker.  He wasn't up walking around or falling down, you know, he was sitting down - -

Q    Yeah.

A    Normally, that's a telltale sign with my uncle how much he had to drink is when he gets up and, you know, goes to walk somewhere and his balance isn't really there. So, it's kind of hard to tell.  And he wasn't slurring his speech or anything.  But he probably had a few drinks.

Q    Kind of well on his way, so to speak?

A    I would say that, yeah.  Sure.

(Doc. 11, Ex. 15, pp. 319-20.)

**Ground Six**

Ferry asserts that trial counsel was ineffective for failing to investigate and present exculpatory evidence.

**A.**    First, Ferry claims that he informed counsel of "cell phones left in the truck that had the information that would exonerate the Defendant and lead counsel to the actual driver," but that counsel failed to investigate this evidence.  (Doc. 1, p. 12.)  The state court denied this claim:

> The Defendant claims that counsel was ineffective for failing to retrieve information contained within his cellular telephone, and another cellular telephone allegedly located inside his truck, that would have exonerated him.  Specifically, the Defendant contends that the last calls made from his cell phone were made to the actual driver of the vehicle (who the Defendant does not name) and to George Leap, and that the second cell phone belonged to the actual driver.  The Defendant claims that he notified counsel that this information was contained in the cell phone, and requested that counsel retrieve the phone from the vehicle in police impound.   The Defendant asserts that there is a strong probability that the outcome of the trial would have been different because the contact information in his phone would have exonerated him.
>
> This claim is without merit.  Although the Defendant does not specifically elucidate within this ground what exonerating information that George Leap would have provided to counsel, for the reasons discussed in Ground Four (B), *supra*, it is unlikely that testimony from Mr. Leap would have changed the outcome of the proceeding.  Regarding the Defendant's contention that counsel should have obtained the contact information of the actual driver of the vehicle from the cell phone, the Defendant has failed to meet his burden of establishing a prima facie case based on a legally valid claim.  See Griffin, 866 So. 2d 1.  The Defendant fails to allege the identity of this "driver," and does not set forth any facts which would have reasonably led counsel to believe that obtaining this information from the cell phones would have led to a viable defense, especially in light of the facts presented at trial as set forth in Ground Four (A), *supra*.  As such, this allegation is too vague and conclusory to warrant relief.  Id.  Accordingly, this claim is denied.

(Doc. 11, Ex. 15, pp. 195-96.)

The state court reasonably found that Ferry's allegation was too vague and

conclusory to establish ineffective assistance of counsel.  *See Tejada*, 941 F.2d at 1559.

Ferry does not explain how a record of his calling George Leap would have affected the

outcome of his trial.  Furthermore, as the state court found, he fails to demonstrate how a

record showing he called an unidentified individual who he claims was driving or the

recovery of this person's phone from Ferry's truck would have changed the outcome of trial

in light of the evidence that Ferry was driving.  The state court's order rejecting this claim

did not result in an unreasonable application of *Strickland*, nor was it based on an

unreasonable determination of the facts.

**B.**    Second, Ferry alleges that counsel was aware that Ferry's blood was on the truck's

passenger side airbag, but failed to "obtain[] samples" in order to show that Ferry was the

passenger.  (Doc. 1, p. 12.) The state court denied this claim:

> The Defendant claims that counsel was ineffective for failing to investigate
> and present evidence that the Defendant's blood was on the passenger side
> airbag, which deployed as a result of the collision.  The Defendant also
> claims that counsel should have investigated and presented evidence that
> the Defendant's injuries were on his right side, consistent with being a
> passenger, and his injuries did not support the conclusion that they were
> caused by the steering wheel or driver's side seat belt.  The Defendant
> asserts that this information would have supported the defense's position that
> the Defendant was not the driver, but was a passenger in the vehicle.  The
> Defendant claims that there is a strong probability that the outcome of the
> trial would have been different because this evidence would have shown that
> the Defendant was the passenger and not the driver.  The State was directed
> to respond to this claim.
>
> In response, the State argued that it was unable to locate any evidence in the
> record that indicates that there was blood on the passenger side airbag and
> therefore concluded that counsel cannot be deficient for failing to test that
> evidence.  The State further argued that despite the Defendant's contention
> that counsel failed to argue that his injuries and other evidence were
> indicative of him being the passenger in the vehicle rather than the driver, the
> record reflects that counsel did argue this theory to the Court and to the jury.
> This Court agrees.  Initially, it appears that the State's response overlooked
> the Defendant's "Appendix in Support of Postconviction Relief," filed on July

24, 2013. In that appendix, attached as "Exhibit E" is the Pinellas County Sheriff's Office Crime Scene Supplement, which states that the officer "observed visible blood on the top of the center console; the interior of the driver's door; and the surface of the passenger side airbag." Although counsel did not have the blood on the passenger side tested, the record reflects that counsel did argue that the Defendant's injuries were consistent with him being a passenger rather than the driver. Specifically, counsel argued that Dr. Michael Lawless testified that the Defendant sustained injuries to his forehead and his right arm, which is consistent with the Defendant's forehead hitting the windshield and right arm being injured in the passenger seat. Counsel further argued that the Defendant did not sustain any injuries that would be consistent with him being in the driver's seat of the vehicle, such as injuries from the steering wheel. In addition to counsel arguing that the Defendant's injuries were inconsistent with him being the driver of the vehicle, counsel also argued that the testimony presented reflect[ed] that the Defendant was not the driver of the vehicle. Counsel argued that Charles Hopkins and John Hopkins witnessed the accident prior to the police arriving stated [sic] that they witnessed an individual get out the vehicle and drop to the ground. Based upon the foregoing, the record reflects that counsel did argue the theory that the Defendant was the passenger in the vehicle, and the Defendant has failed to meet the first prong of <u>Strickland</u>.

Even assuming that counsel was deficient for failing to test the blood on the passenger airbag, the Defendant has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different. <u>Rutherford</u>, 727 So. 2d at 216; <u>see also</u> <u>Valle</u>, 778 So. 2d at 965-66 (finding that a reasonable probability is "a probability sufficient to undermine confidence in the outcome."). As noted in Ground One, there was overwhelming evidence indicating that the Defendant was in fact driving the vehicle and that the Defendant was the only person observed at the accident scene near the Defendant's vehicle. In light of the evidence indicating that the Defendant was driving the vehicle, the Defendant fails to demonstrate how the testing of the blood on the passenger side airbag would have a reasonable probability of changing the outcome of the trial. Accordingly, this claim is denied.

(Doc. 11, Ex. 17, pp. 478-79) (court's record citations omitted).

The record supports the state court's conclusion that Ferry failed to satisfy *Strickland*. Counsel did argue to the jury that Ferry's injuries indicated that he was sitting in the passenger seat when the crash occurred and that evidence suggested that another

person was driving.  (Doc. 16, Ex. 26, pp. 659-63.)  Furthermore, Ferry has not shown that a positive test result would exclude the possibility that he was driving but some of his blood simply spattered on the passenger side airbag during the crash.  Therefore, in light of the significant evidence that he was the driver, Ferry has not shown a reasonable probability that the outcome of the trial would have been different if counsel had had testing performed.  As the record supports the state court's finding, Ferry does not show that the rejection of his claim was an unreasonable application of *Strickland* or was based on an unreasonable application of the facts.

**C.**     Third, Ferry argues that counsel failed to call a "crash expert" to testify that, contrary to Officer Resler's testimony, the truck was not running when it came to rest.  (Doc. 1, p. 12.)  This claim is unexhausted because Ferry did not present it to the state postconviction court in his first or second amended postconviction motions.  (Doc. 11, Ex. 14, pp. 52-57; Ex. 15, p. 168.)   As Ferry cannot return to state court to file an untimely, successive postconviction motion, his claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138. Ferry has not demonstrated that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default.  Alternatively, notwithstanding the default, Ferry is not entitled to relief because his claim is speculative.  He does not identify any crash expert, provide any evidence that an expert would have testified as he theorizes, or explain the significance of such testimony.  *See Ashimi*, 932 F.2d at 650; *Johnson*, 256 F.3d at 1187.  Accordingly, Ferry's claim warrants no relief.

**D.**     Fourth, Ferry contends that counsel should have called a "medical professional" to testify that his injuries were consistent with his being a passenger in the truck.  (Doc. 1, p. 12.)  His claim is liberally construed as presenting the argument raised in claim five(c) of

his second amended postconviction motion, in which he also argued that counsel should

have called a crash reconstruction expert to testify to his position in the truck at the time

of the crash.  The state court rejected Ferry's claim:

> The Defendant claims that counsel should have called another crash
> reconstruction expert and a medical professional to demonstrate what
> position he would have been in at the time of impact and after.  The
> Defendant claims that the testimony of a medical professional would have
> shown that the injuries he sustained would have supported the conclusion
> that he was a passenger in the vehicle.  The Defendant claims that there is
> a reasonable probability that the outcome of the trial would have been
> different because this evidence would have shown that the Defendant was
> the passenger and not the driver.
>
> The Defendant's claim is facially insufficient.  As stated above, this claim was
> previously stricken as facially insufficient.  Upon amendment, the Defendant
> fails to allege a facially sufficient claim of ineffective assistance of counsel for
> failure to call a witness.   When asserting a claim that trial counsel was
> ineffective for failing to call a witness to testify at trial, a defendant must
> sufficiently allege: 1) the identity of the prospective witness; 2) the substance
> of the witness's testimony; 3) how omission of the testimony prejudiced the
> outcome of the trial; and 4) that the witness was available to testify.  Barthel
> v. State, 882 So. 2d 1054, 1055 (Fla. 2d DCA 2004) (citing Nelson v. State,
> 875 So. 2d 579, 583-84 (Fla. 2004)).  Second, the defendant must allege
> that he advised counsel of such a witness.  Prieto v. State, 708 So. 2d 647, 649
> (Fla. 2d DCA 1998).  Additionally, a defendant must meet the second prong
> of the Strickland test and show that a reasonable probability exists that the
> outcome of the proceeding would have been different had this witness
> testified.  Because the Defendant fails to state a facially sufficient claim, after
> being afforded the opportunity to amend the claim, this claim is denied.  See
> Fla. R. Crim. P. 3.850(e); Spera v. State, 971 So. 2d 754, 760 (Fla. 2007).
>
> Even assuming that the Defendant's claim was facially sufficient, his claim
> would still be denied in light of the overwhelming evidence that the Defendant
> was in fact the driver of the vehicle.  Because the record reflects that the
> Defendant was the driver of the vehicle had counsel called additional experts
> to testify to the Defendant's positioning in the vehicle there is not a
> reasonable probability that the outcome of the trial would have been different.
> Accordingly, this claim is denied.

(Doc. 11, Ex. 17, pp. 480-81) (court's record citations omitted).

As he does not name any medical professional or crash reconstruction expert whom

counsel could have called or provide any evidence that such a witness would have testified as he suggests, the record supports the state court's determination that Ferry failed to allege facts necessary to present a facially sufficient claim.  Accordingly, Ferry's claim is too speculative to warrant relief.  *See Ashimi*, 932 F.2d at 650; *Johnson*, 256 F.3d at 1187.  Alternatively, as the state court noted, Ferry fails to show prejudice as a result of counsel's performance in light of the evidence that he was driving the truck.  As he has not shown that counsel acted unreasonably in failing to call witnesses as he alleges, Ferry fails to establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this claim.  Ferry therefore is not entitled to relief on Ground Six.

**Ground Seven**

Ferry contends that the State violated *Giglio v. United States*, 405 U.S. 150 (1972) by presenting false testimony of John Hopkins.[8]  He alleges that "[a]t trial eyewitness John Hopkins changed his testimony completely from that of the deposition."  (Doc. 1, p. 13.)  Ferry appears to contend that John Hopkins's trial testimony that he saw a police officer pull a man from the truck was inconsistent with his deposition testimony.

The state court rejected Ferry's claim:

The Defendant alleges the State committed a <u>Giglio</u> violation by failing to correct material trial testimony the State knew was false.  Specifically, the Defendant alleges that John Hopkins' trial testimony differed from his pre-trial deposition testimony.  In its June 20, 2013 order, the Court struck this claim for failure to explain how Mr. Hopkins' testimony was material to the instant case.  <u>See</u> <u>Ponticelli v. State</u>, 941 So. 2d 1073, 1088 (Fla. 2006).  In his first amended motion, the Defendant again failed to explain the materiality of Mr. Hopkins' allegedly inconsistent testimony; thus the Court again struck this claim in its October 8, 2013 order and provided the Defendant another

---

[8] *Giglio* states that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" 405 U.S. at 153 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

opportunity to amend this claim.

In his second amended motion, the Defendant claims that John Hopkins' trial testimony was false, and that the testimony was material because John Hopkins' original testimony corroborated that of Charles Hopkins and refuted the State's allegations against the Defendant.  The Defendant claims that John Hopkins' original deposition testimony supported the defense that the Defendant was not the driver of the vehicle.

In order to state a claim under Giglio, a defendant must allege that: "(1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material."  Guzman v. State, 868 So. 2d 498, 505 (Fla. 2003).  A statement is material under Giglio "if there is any reasonable likelihood that the false testimony could have affected the judgment."  Id. at 506 (internal quotation marks omitted).  The State was directed to respond to this claim.

In response, the State argues that the Defendant has failed to establish a Giglio claim.  This Court agrees.  The record does not contain a deposition of Mr. John Hopkins. [FN] The Defendant does not attach the transcription of the deposition and states that Mr. Hopkins' deposition "refuted the prosecution's allegations against the Defendant," but fails to state specifically what his prior deposition testimony was and how it refutes the prosecution's allegations.  Guzman, 868 So. 2d at 505.  Even if there was a difference between . . . Mr. Hopkins' deposition testimony and his trial testimony, mere differences in witness testimony is insufficient to show perjury and establish a Giglio claim.  See Ferguson v. State, 101 So. 3d 895 (Fla. 4th DCA 2012) (holding that "mere differences in testimony found in witness statements made at different times, or between witnesses on the same subject, are not alone sufficient to show perjury"); see also Floyd v. State, 18 So. 3d 423, 450 (finding that inconsistencies in testimony is not per se perjury).  Furthermore, the Defendant fails to show that the State knew of the false testimony.  Guzman, 868 So. 2d at 505.  The Defendant alleges that "if the State knew of the change in testimony" then it was a discovery violation, and that "the court should hold an evidentiary hearing to determine whether or not the State Attorney's Office had foreknowledge of the change in testimony."  Based upon these allegations, it appears that the Defendant is merely speculating that . . . the State *may have* known that there were false or inconsistent statements and seeks to go on a fishing expedition to establish his Giglio claim.  (Emphasis added).  However, speculation cannot serve as the basis for postconviction relief.  See Bass v. State, 932 So. 2d 1170, 1172 (Fla. 2d DCA 2006); Spencer v. State, 842 So. 2d 52, 60 (Fla. 2003).

> [FN] The Court notes that during trial there was a reference to the deposition of Mr. John Hopkins.  This deposition was not

filed in the Court file, or provided for the Court's benefit.

Finally, the Defendant fails to show how the statement was material. As noted above, a statement is material under <u>Giglio</u> "if there is any reasonable likelihood that the false testimony could have affected the judgment." <u>Guzman</u>, 868 So.2d at 506. Liberally construed, it appears that the Defendant is alleging that Mr. Hopkins' deposition testimony corroborated or was "the same as" the trial testimony of Charles Hopkins who testified at trial that a man got out of the vehicle and dropped to the ground. The Defendant appears to be arguing that Mr. Hopkins' trial testimony differed from his deposition because he did not testify at trial that he witnessed a man get out of the car, rather he testified that he did not see anyone exit the Defendant's truck, and saw an officer pulling a man out of the truck. To the extent the Defendant is alleging that this difference in Mr. Hopkins' trial testimony is false and has any reasonable likelihood of affecting the judgment, the record reflects that the jury was presented with this inconsistency and had it to consider during deliberations. More specifically, during trial, counsel thoroughly cross-examined Mr. Hopkins with respect to his prior inconsistent statements, impeached Mr. Hopkins with his prior statements to the police, cross-examined Officer Hole to testify to the inconsistency, and argued the inconsistencies in Mr. Hopkins' testimony to the jury during closing. Based upon the foregoing, the jury was aware of the fact that Mr. Hopkins made a prior statement that was the same as Charles Hopkins. Namely, that he previously said that he witnessed a man lay down on the ground next to the Defendant's vehicle. Because the jury was informed of the prior inconsistent statement and had it to consider during deliberations, this Court finds that the testimony of Mr. Hopkins is not material. <u>Guzman</u>, 868 So.2d at 506. This claim is denied.

(Doc. 11, Ex. 17, pp. 481-83.)

To make out a valid *Giglio* claim, a petitioner "must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material-i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment."

*Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (quoting *Davis v.*

*Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)).

The record supports the state court's conclusion that Ferry failed to show the State

knowingly used false testimony of John Hopkins, as his deposition has not been

presented.[9]  As the state court noted, a potential difference between his recollection at the time of trial[10] and his deposition does not establish a *Giglio* violation.  *See, e.g., United States v. Bailey*, 123 F.3d 1381, 1395-96 (11th Cir. 1997) (when movant has only shown "a memory lapse, unintentional error, or oversight," rather than perjury, he fails to demonstrate that the statements were actually false).

Nor does Ferry show that the state court unreasonably determined that the allegedly false testimony was material in light of defense counsel's impeachment of John Hopkins and questioning of Officer Hole.  This revealed that, in contrast to John Hopkins's trial testimony, he did not tell Officer Hole after the crash that observed police pull a man from the truck and merely stated that he saw a man lying on the ground next to the truck.  (Doc.

---

[9] Furthermore, this Court notes that discussion at a bench conference indicates that John Hopkins' trial testimony that an officer pulled a man from the truck was in fact consistent with his deposition testimony:

> THE COURT: [ ] Okay.  So you're going to ask [John Hopkins], Did you talk to the State Attorney?
>
> [COUNSEL]: Yes.
>
> THE COURT: And what's going to happen if he says yes?  Then what are you going to ask him?
>
> [COUNSEL]: Then I'm going to ask him, Did you discuss the fact that your testimony today is going to be different than what you told the police at the time?
>
> THE COURT: Okay.  What is your objection[?]
>
> [STATE]: Well, the objection is obviously he's implying recent fabrication, and we should then be able to get into his prior consistent statement that he gave at the deposition where he stated that the police officer pulled the guy out of the truck.
>
> THE COURT: I agree with that.
> . . .
> COUNSEL: I'll withdraw the question.

(Doc. 16, Ex. 24, pp. 354-55.)

[10] John Hopkins stated that he had a clear recollection of seeing an officer pull a man out of the truck. (Doc. 16, Ex. 24, p. 356.)

16, Ex. 24, pp. 352-53; Ex. 25, pp. 484-86.)  As Ferry does not show that the state court unreasonably applied *Giglio* or unreasonably determined the facts in rejecting his claim, he is not entitled to relief on Ground Seven.[11]

**Ground Nine**

Ferry argues that the State improperly admitted collateral crimes evidence without providing the notice required by Florida law, in violation of his Sixth and Fourteenth Amendment rights, and that counsel failed to object.  In particular, Ferry claims that the prosecutor's references to his misdemeanor warrant were improper because the warrant "was not part of the charged information and was unfairly prejudicial because it was classic propensity evidence that showed a defendant's bad character: F.S.A. § 90.401-90.403-90.404(2)(a)."  (Doc. 1, p. 16.)

The state court denied Ferry's claim:

The Defendant [argues] that the State impermissibly introduced collateral crime evidence contrary to section 90.404(2)(d)(1), Florida Statutes, because they failed to give notice ten days before trial and alleges that counsel was ineffective for failing to object.  Specifically, the Defendant argues that the State erroneously introduced irrelevant collateral crime evidence by referencing his outstanding warrant, which was prejudicial because "it was classic propensity evidence that showed defendant's bad character."  The Defendant contends that had counsel objected the outcome of the trial would have been different.

The Defendant's argument is without merit.  As noted above, the Defendant was charged with one count of DUI manslaughter (count one), one count of fleeing or eluding (count two), and one count of driving while license suspended or revoked (count three).  The record reflects the Defendant's vehicle was pursued because he had an outstanding warrant for his arrest.

---

[11] Ferry seeks an evidentiary hearing on this claim.  An evidentiary hearing is not warranted.  *See Landers v. Warden*, *Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

However, when the officers attempted to conduct a traffic stop, the Defendant pulled over as if he was attempting to stop, and then fled the scene, which later resulted in the coll[i]sion and the death of the victim in this case. Despite the Defendant's contention that the State failed to give the requisite notice of its intent to use collateral crimes evidence when it introduced testimony about the Defendant's outstanding warrant, reference to the outstanding warrant was not evidence of bad acts not included in the charged offense that would require notice. Instead, reference to the outstanding warrant was relevant and admissible evidence under section 90.402, Florida Statutes, in order to give the jury an intelligible account of the entire criminal episode from which the charges arose.

Section 90.404, Florida Statutes, governs collateral crimes evidence that is extrinsic to the charges offenses and is admissible to prove a material fact in issue, such as motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. § 90.404(a), Florida Statutes; Dorsett v. State, 944 So.2d 1207, 1212 (Fla. 3d DCA 2006). The State is required to provide the defendant with notice of its intent to rely on this evidence at trial because 90.404 evidence is unrelated to the charged offense. § 90.404(2)(d), Florida Statutes. In contrast, evidence that is inextricably intertwined with the charges being prosecuted does not require notice. Tumulty v. State, 489 So.2d 150 (Fla. 4th DCA 1986) (holding that "inseparable crime evidence is admissible under Section 90.402 because it is relevant" and, "[t]herefore, there is no need to comply with the ten-day notice provision"). Evidence is inextricably intertwined if the evidence is necessary to: "(1) adequately describe the deed, (2) provide an intelligent account of the crime(s) charged, (3) establish the entire context out of which the charged crime(s) arose, or (4) adequately describe the events leading up to the charged crime(s)." Dorsett, 944 So.2d at 1212 (internal citations omitted). The Court finds that the evidence of the outstanding warrant was properly admitted pursuant to section 90.402 as relevant evidence, evidence which was inextricably intertwined with the crime charged and offered to establish the entire context of the events leading up to the charged offense, thus no notice was required and counsel was not deficient for failing to object. Additionally, the record reflects that counsel did limit any testimony relating to bad character testimony outside of the limited fact that the Defendant had a warrant outstanding for his arrest. Based upon the foregoing, this claim is denied.

(Doc. 11, Ex. 17, pp. 483-84.)

The state court found that evidence of Ferry's outstanding warrant was admissible under § 90.402, Fla. Stat., to fully explain the circumstances that led to the charged

offenses.  This Court must defer to the state court's determination that the evidence was properly admitted under state law.  *Richey*, 546 U.S. at 76.  Accordingly, Ferry has not demonstrated that his counsel was ineffective for failing to object to the State's presentation of this evidence.  *See Will*, 278 Fed. App'x at 908*; Herring*, 397 F.3d at 1354-55.  Because Ferry has not shown that the state court's decision resulted in an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts, he is not entitled to relief on Ground Nine.

**Ground Ten**

Ferry alleges that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to provide John Hopkins's deposition to the defense in discovery.   A *Brady* claim is cognizable in a postconviction motion.  *Felder v. State*, 198 So.3d 951, 953 (Fla. 2d DCA 2016).  However, Ferry's *Brady* claim is unexhausted because he did not present it in his first or second amended postconviction motion.  (Doc. 11, Ex. 14, pp. 33-63; Ex. 15, pp. 146-85.)   As Ferry cannot return to state court to present the claim in an untimely, successive postconviction motion, the claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Ferry does not argue or demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default.  Consequently, Ground Ten is barred from federal habeas review.

**Ground Eleven**

Ferry contends that the cumulative effect of counsel's alleged deficiencies deprived him of a fair trial.   The state court denied his claim because he failed to show any deficiencies by counsel:

The Defendant alleges that the outcome of his trial was prejudiced by the

cumulative effect of counsel's errors.  The Court . . . finds that it must be denied, all other grounds for relief raised by Defendant having been denied.  See Suggs v. State, 923 So.2d 419, 441 (Fla. 2005) ("[A] claim of cumulative error will not be successful if a petitioner fails to prove any of the individual errors he alleges.").  This claim is therefore denied.

(Doc. 11, Ex. 17, p. 484.)

As Ferry has failed to establish any specific instances of ineffective assistance, he cannot show that he was entitled to relief on this claim.  *See Morris v. Sec'y, Dept. of Corr*., 677 F.3d 1117, 1132 (11th Cir. 2012) (where individual claims of error or prejudice are without merit, "we have nothing to accumulate."); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal.").  Accordingly, Ferry has not shown that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Ground Eleven warrants no relief.

It is therefore

**ORDERED** that Ferry's petition (Doc. 1) is **DENIED**.  The Clerk is directed to enter judgment against Ferry and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is **ORDERED** that Ferry is not entitled to a certificate of appealability (COA).  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Ferry "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).   Ferry has not made the requisite showing in these circumstances.   Finally, because Ferry is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

      **ORDERED** at Tampa, Florida, on July 18, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Brian K. Ferry, Sr.
Counsel of Record